UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NORTH PACIFIC INSURANCE COMPANY, a Massachusetts Corporation, | Case No. 4:11-CV-00147-EJL |
| Plaintiff - Counterdefendant, | **MEMORANDUM ORDER** |
| v. | |
| RICHARD GARDNER, an individual, and DIXIE GARDNER, an individual, | |
| Defendants - Counterclaimants. | |

## INTRODUCTION

Pending before the Court in the above-entitled matter are Plaintiff's Motion for Summary Judgment and related Motion to Strike. (Dkt. 14, 24.) Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, these Motions shall be decided on the record before this Court without oral argument.

**MEMORANDUM ORDER - 1**

## BACKGROUND

On April 7, 2011, the Plaintiff North Pacific Insurance Company ("North Pacific") filed a Complaint initiating this action for Declaratory Judgment against the Defendants Mr. Richard Gardner and Mrs. Dixie Gardner. (Dkt. 1.) North Pacific had issued to Mr. Gardners, d/b/a "Dick's Mobile Catering," a Business Auto Coverage Policy, Form LCA 4055 01-09 and LCA 4056 01-09, Policy No. C12 145273 (hereinafter the "Policy"). (Dkt. 1 at ¶ 4.) The Policy was for a period of one year effective July 3, 2009. (Dkt. 1 at 3.) The questions raised in this case concern the Gardner's request for insurance coverage from North Pacific for damages arising from a car accident occurring on July 2, 2010. (Dkt. 1 at 2.)

On that day at approximately 9:00 p.m., Mr. Gardner was driving the insured vehicle, a 1979 Chevrolet box van, covered by the Policy when the accident in question occurred. (Dkt. 1 at 3.) Just prior to the accident, Mr. Gardner has stated that he saw traffic behind him in his rear-view mirror and another vehicle approaching his van from a hill in front of him. Mrs. Gardner states that she saw a vehicle accelerate past their catering van on the left across a double yellow line. That vehicle then veered back into the right-hand lane in which the Gardner's catering van was traveling. Mr. and Mrs. Gardner both state they heard a loud bang and Mr. Gardner felt an impact right before their vehicle went off the road. Neither Mr. nor Mrs. Gardner have stated that they recall seeing the passing vehicle strike their catering van. (Dkt. 14-2 at ¶¶ 2, 3.) The Gardner's van left off the road and crashed into a parked tractor and hay rake causing damage to the

**MEMORANDUM ORDER - 2**

van and injuring both Mr. and Mrs. Gardner. (Dkt. 1 at ¶ 4.)

Following the accident, the Gardners made a claim under the Policy to recover damages suffered in the accident. Mr. and Mrs. Gardner allege the accident was the result of a hit-and-run driver and, therefore, covered under the uninsured/underinsured motorist provision of the Policy. North Pacific conducted interviews of both Mr. and Mrs. Gardner and investigated their claim for coverage. Based on its investigation, North Pacific determined there was no physical contact between another vehicle and the insured vehicle and denied coverage. North Pacific then filed the Complaint in this case seeking a declaratory judgment finding that the accident does not fall within the uninsured/underinsured motorist coverage of the Policy; specifically, that there is no uninsured/under insured coverage under the Policy unless there is a "hit-and-run" vehicle that made "physical contact" with the insureds' vehicle. (Dkt. 1 at ¶ 5.) In addition, North Pacific contends the Gardners did not comply with the Policy's other condition requiring them to promptly notifying the police of a hit-and-run and, on that basis, are also not covered by the Policy. (Dkt. 14-1 at ¶ 9-11.) Mr. and Mrs. Gardner counter that the Policy is ambiguous as to whether physical contact is required for coverage and that they satisfied the notification provision. (Dkt. 15.) The Gardners have also filed counterclaims for breach of contract and breach of good faith and fair dealing. (Dkt. 4.) North Pacific filed the pending Motion for Summary Judgment and Motion to Strike which the Court now takes up and finds as follows.

**MEMORANDUM ORDER - 3**

## DISCUSSION

**1.     Motion for Summary Judgment**

**A.     Standard of Review**

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The party moving for summary judgment has the initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). Once the moving party has met this initial burden, the nonmoving party has the subsequent burden of presenting evidence to show that a genuine issue of fact remains. The party opposing the motion for summary judgment may not rest upon the mere allegations or denials of her

**MEMORANDUM ORDER - 4**

pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id*. at 248. If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial" then summary judgment is proper as "there can be no 'genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)[1]

Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of summary judgment, must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation. An issue, before it may be considered "genuine," must be established by "sufficient evidence supporting the claimed factual dispute . . . to require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co. Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

---

[1]*See also,* Rule 56(e) which provides:

(e)     **Failing to Properly Support or Address a Fact.** If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1)     give an opportunity to properly support or address the fact;
(2)     consider the fact undisputed for purposes of the motion;
(3)     grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it; or
(4)     issue any other appropriate order.

**MEMORANDUM ORDER - 5**

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted). Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

**B.      Hit-and-Run Provision**

The language in the Policy concerning a hit-and-run accident states:

> "'Uninsured motor vehicle' means a land motor vehicle or 'trailer': ...
>
> c.      That is a hit-and-run vehicle and neither the driver nor owner can be identified. The vehicle must hit an 'insured,' a covered 'auto' or a vehicle an 'insured' is 'occupying.'"

(Dkt. 1 at Ex. 1; Dkt. 14-2 at ¶¶ 3-5.) It is not disputed that the Gardner's catering van and Mr. and Mrs. Gardner are all "insured" under the definitions in the Policy. (Dkt. 1 at ¶ 3.)[2] It is also undisputed that the Policy covers damages caused by uninsured motorists; specifically, hit-and-run vehicles. What is at issue in this case are the specific requirements for obtaining uninsured/underinsured coverage in a hit-and-run accident.

North Pacific contends the Policy is clear based on the use of the word "hit" that "physical contact" is required for uninsured motorist coverage. The Gardners argue that the Policy's language is ambiguous because the word "hit" does not seem to be defined in the policy.

When interpreting insurance policies, Idaho courts apply "the general rules of contract law subject to certain special canons of construction." *Arreguin v. Farmers Ins. Co. of Idaho*, 180 P.3d 498, 500 (Idaho 2008) (citing *Clark v. Prudential Prop. & Cas.*

---

[2] Relevant portions of the Policy read:

A. Coverage:

1. We will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle." The damages must result from "bodily injury" sustained by the "insured" caused by an "accident." The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle." ...

B. Who is an Insured: If the Named Insured is designated in the Declaration as:

1. An individual, then the following are "insureds":
         a. The Named Insured and any "family members".
   ...

(Dkt. 1 at Ex. 1; Dkt. 14-2 at ¶¶ 3-5.)

**MEMORANDUM ORDER - 7**

*Ins. Co.*, 66 P.3d 242, 244 (Idaho 2003)). "The general rule is that, because insurance

contracts are adhesion contracts, typically not subject to negotiation between the parties,

any ambiguity that exists in the contract 'must be construed most strongly against the

insurer.'" *Id.* (quoting *Farmers Ins. Co. of Idaho v. Talbot*, 987 P.2d 1043, 1047 (Idaho

1999) (citation omitted). Where a contract's language is clear and unambiguous, its

interpretation and legal effect are questions of law. *Bondy v. Levy*, 829 P.2d 1342 (Idaho

1992). If, however, the language in the insurance contract is "reasonably subject to

differing interpretations," then it is ambiguous and will be construed strongly against the

insurer. *See Clark*, 66 P.3d at 244; *see also Mutual of Enumclaw Ins. Co. v. Roberts*, 912

P.2d 119, 122 (Idaho 1996). It is up to the Plaintiff to make sure their policy is clear in its

restriction of scope. *See Clark*, 66 P.3d at 245. Whether an insurance policy is ambiguous

is a question of law to be answered by the Court. *Arreguin*, 180 P.3d at 500; *see also*

*Armstrong v. Farmers Ins. Co. of Idaho*, 205 P.3d 1203 (Idaho 2009) (citation omitted);

*Clark v. St. Paul Property & Liab. Ins. Cos.*, 639 P.2d 454 (1981).

 Here, the Court finds the language of the Policy is unambiguous in that it requires

there to be some kind of physical contact between the insured and another.[3] The common

---

 [3] In Idaho, hit-and-run coverage is neither mandated nor prohibited. Idaho Code § 41-2502, directs that coverage be made available for the protection of persons insured thereunder who are legally entitled to recover from owners or operators of uninsured motor vehicles. *See Hammon v. Farmers Ins. Co. of Idaho*, 707 P.2d 397 (Idaho 1985). This statutory language is consistent with an insurance policy's requirement for there to be physical contact in order to trigger coverage under the uninsured motorist clause of the policy. *See Miller v. United States Fidelity & Guar. Ins. Co.*, 738 P.2d 425, 427 (Idaho 1987).

**MEMORANDUM ORDER - 8**

and ordinary meaning of "hit" implies physical contact.[4] The word is not ambiguous. A reasonable person would understand "hit-and-run" to mean physical contact between two vehicles. Thus, the Court finds the unambiguous language in the Policy requires some kind of physical contact in order to qualify as having been "hit." The extent and type of contact required is a different matter.

Idaho law articulates that physical contact may be "direct touching" or "indirect contact which occurs when a vehicle knocks an intermediate object into the insured," either by "collision" or "thrown object." *See Miller v. U.S. Fidelity & Guaranty Ins. Co.,* 738 P.2d 425, 427 (Idaho App. 1987) (citing *Sapp v. State Farm Automobile Ins. Co.,* 361 N.E.2d 174 (Ind.Ct. App. 1977) (no physical contact where errant driving by an unidentified motorist induces a response by another driver, who swerves to avoid a collision) and *Krych v. Mercury Casualty Co.*, 94 Cal. Rptr. 592 (1971) (no physical contact, as contemplated by the insurance policy, where the transmitted "contact" is nothing more than a molecular interaction such as sound or light energy)). Direct contact is easily defined to include a direct touching and/or contact. Indirect contact requires a bit

---

[4] According to Merriam-Webster's Dictionary and Dictionary.com, the following are the first few listed and reasonably, the most common definitions of "hit":
    (1) to deal a blow or strike to: hit *the nail with the hammer*
    (2) to come in contact with: *the ball* hit *the window*
    (3) to strike with an object as to impart or redirect motion
    (4) to affect adversely

The Court notes Gardners' argument that "affect adversely" is an accepted definition of "hit", but the Court points out that the more common meaning of "hit" implies physical contact. (Dkt. 15 at 4.)

**MEMORANDUM ORDER - 9**

more explanation. According to *Miller*, for there to be indirect contact which would amount to physical contact, there must be a "substantial nexus among the vehicle, the intermediate object and the insured, and if the transmitted force is continuous and contemporaneous, then there has been physical contact within the meaning of the policy." *Miller*, 738 P.2d at 427.

The material issue in dispute in this case is whether or not the Gardners' car was actually hit by another vehicle or otherwise contacted so as to qualify as a "hit" under the language of the Policy. This is the crux of the dispute. It is unclear and disputed by both sides as to exactly what happened to cause the accident. On this Motion, the Court finds that the Gardners have established the existence of a genuine issue of material fact, so as to preclude entry of summary judgment against them. *See Celotex*, 477 U.S. at 322-23; Fed R. Civ. P. 56(e).

When considering the Gardner's sworn statements about that day, (stating they saw a car passing closely and hearing a loud bang) (Dkt. 14-2), a witness's statement of what he saw[5], the police and accident report[6], and the affidavits submitted in opposition to this motion (sworn statements of the Gardners, Counsel, and Trooper Ed Robertson) (Dkts. 16-19), the Court finds that there is a genuine issue of fact as to the cause of the

---

[5] "I was starting the irrigation pumps. ½ mile south of the accident site. I saw the vehicle coming off of the road in a cloud of dust. When it hit the tractor and hay rake, I heard a crack. I immediately got in my pick up and went to the crash site. I saw a car that looked like it was trying to pass the van that may have [been] the reason the [car] left the road. I was ½ a mile away so it is hard to be sure, if the car contributed to the accident. There were cars coming over the hill from the west. They were pretty close." Witness statement of Ismael Gonzalez. (Dkt. 21 at ¶ 6.)

[6] Stating that a vehicle passed and cut off the catering van causing the crash. (Dkt. 14-6.)

**MEMORANDUM ORDER - 10**

accident. More specifically, it is unclear whether the Gardners were hit by another car or

otherwise physically contacted or not. Because this fact is disputed, the Court must deny

the Motion for Summary Judgment and set this matter for trial. This is a question the jury

will have to answer based on its determination of the credibility of the witnesses, the

weight to give to each person's testimony, any expert opinions, and all of the evidence

presented to it at trial.

> **C.      Condition to Promptly Notify Police**

North Pacific argues an additional reason it is not obligated to provide coverage is

because the Gardners did not comply with their duty under the Policy to give prompt

notice to the police of a hit-and-run accident. (Dkt. 14-1 at ¶ 9-12.) The Gardners

maintain they complied with this requirement as evidenced by the police report indicating

the officer had knowledge of the hit-and-run driver from the beginning of the

investigation and that Mrs. Gardner recalls telling several people at the scene about a car

that cut them off. (Dkt. 15 at ¶ 7.) Additionally, Mr. Gardner was in the hospital and in

and out of consciousness for days following the accident, unable to speak to police about

the accident. (Dkt. 15 at ¶ 7-8.)

The portions of the Policy relevant to the notification issue state:

> BUSINESS AUTO COVERAGE FORM...
>
> SECTION IV-BUSINESS AUTO CONDITIONS
>
> The following conditions apply in addition to the Common Policy
>
> Conditions:...

**MEMORANDUM ORDER - 11**

2.      Duties In The Event Of Accident, Claim, Suit Or Loss

We have no duty to provide coverage under this policy unless there

has been full compliance with the following duties: [including

Section (E)(2)(a) of Form 4055 below]

E.      <u>Changes in Conditions:</u> The Conditions

are changed for Uninsured Motorists Coverage

as follows: ...

2.      Duties In The Event Of Accident,

Claim, Suit Or Loss is changed by

adding the following:

a.      Promptly notify the police if a hit-and-

run driver is involved, and...

(Dkt. 1, Ex. 1 and Dkt. 14-2 at ¶¶ 3-5.) North Pacific alleges this language establishes a

condition precedent to coverage requiring the Gardners to comply before its obligation to

insure arises.

    Requiring prompt notification of the police of a hit-and-run is a reasonable

condition precedent in an insurance policy. *See Viani v. Aetna Insurance Co.*, 501 P.2d

**MEMORANDUM ORDER - 12**

706, 710 (1972), *overruled on other grounds by Sloviaczek v. Estate of Puckett*, 565 P.2d

564 (1977); *Leach v. Farmer's Auto. Interinsurance Exch.*, 213 P.2d 920, 923 (Idaho

1950) ("[P]rovisions for notice and cooperation in a liability insurance policy are valid,

reasonable requirements...."). Failure to satisfy such a condition may release the insurer

from the obligations imposed by the contract. *Leach*, 213 P.2d at 920. The question of

whether or not notice was prompt in accordance with the terms of the insurance policy is

a question of fact. *Viani*, 501 P.2d 706.

In this case, this Court finds that there is a genuine issue of material fact as to the

extent of the Gardner's performance of this condition. North Pacific points out that Mr.

Gardner testified that he did not recall speaking to the police about the accident and

argues that Mrs. Gardner never told police that another vehicle struck the van. (Dkt. 14-1

at 10.) Thus, North Pacific maintains the Gardners failed to notify police that they were

involved in an accident with a hit-and-run driver. The Gardners counter by pointing to the

police report which, they argue, goes to show the police knew of the hit-and-run driver

from the beginning of their investigation. (Dkt. 15 at 7.) Furthermore, they note that they

were transported by ambulance directly to the hospital from the accident scene, Mrs.

Gardner cannot remember who she spoke with following the crash as a result of her

injuries as well as her concern for her husband but has stated that she recalls telling

people at the scene about the other car, and Mr. Gardner had suffered life-threatening

injuries preventing him from notifying the officers promptly. (Dkt. 15 at 7-8.)[7]

Based on the submissions of the parties at this time, the Court finds a genuine issue of material fact exists as to whether or not the Gardners satisfied the notification provision of the Policy. What was told to the police both at the scene and later is disputed. Mrs. Gardner's Affidavit states that she "spoke with several people at the scene about the car that ran us off the road" but she does not remember if she spoke with police at the scene. (Dkt. 20-2.) Mrs. Gardner does remember talking to the officer's supervisor about the police report following her release from the hospital. The police collision report itself states the "Vehicle was forced off the road by other vehicle passing it" and "The driver of the vehicle who was said to be passing was not found due to the witness not being able to give any description of the vehicle." (Dkt. 21, Ex. A.) The witness's statement also mentioned another vehicle. Thus, there is some indication that the officers were made aware that there was another vehicle involved in the incident giving rise to a genuine question as to a material fact. Furthermore, what was told to the officers at the scene is complicated by the fact that both Mr. and Mrs. Gardner were hospitalized immediately following the accident in poor condition for a few days. Based on the foregoing, the Court finds a genuine issue of material fact exists as to this issue and the Motion for Summary Judgment is denied.

---

[7] The Gardners also argue there North Pacific was not prejudiced by any notice deficiency. (Dkt. 15 at 8.) The law in Idaho, however, does not require a showing of prejudice to the insurer where an insured fails to perform a condition precedent of giving notice of a suit and/or accident within a reasonable time. *See Hoffman v. Oregon Mut. Ins. Co.*, No. CIV. 1:11-120 WBS, 2012 WL 1981484, at *5 (D. Idaho May 29, 2012).

**MEMORANDUM ORDER - 14**

**D.     The Gardner's Counter Claims**

The Gardners have also raised Counter Claims for breach of contract and breach of duty of good faith and fair dealing. (Dkt. 4.) The Motion for Summary Judgement seeks a ruling as a matter of law as to the Counter Claims. The Counter Claims are premised upon the same disputed facts and circumstances as North Pacific's claims. For the same reasons stated above, the Court finds genuine issues of material fact exist as to the Gardner's Counter Claims and the Motion is denied in this respect.

**2.     Motion to Strike Affidavit of Trooper Robertson**

In opposition to the Motion for Summary Judgment, Mr. and Mrs. Gardner filed an affidavit of, among others, Trooper Edward Robertson, an accident reconstructionist hired to examine the information relating to the accident. (Dkt. 19.) This Affidavit is the subject of the Motion to Strike wherein North Pacific argues that Trooper Robertson does not meet the requirements of Federal Rule of Evidence 702 or *Daubert* in the methodology used to reach the conclusions in his opinion affidavit. (Dkt. 24.)

Rule 702 permits testimony is based on "technical or other specialized knowledge and will assist the trier of fact to understand the evidence or determine a fact at issue." The rule specifically provides that a person can be qualified as an expert based on experience or training. *Id.* Proponents of expert testimony do not have to demonstrate for purposes of summary judgment or trial that their expert's assessments are correct. *See Parkinson v. Guidant Corp.,* 315 F.2d 754, 758 (W.D.Pa. 2004).

**MEMORANDUM ORDER - 15**

*Daubert* requires the district court to determine whether the expert's testimony reflects "scientific knowledge derived by the scientific method" and whether his or her work product amounts to "good science." *United States v. Sherwood*, 98 F.3d 402, 407 (1996) (citing *Daubert v. Merrill Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)). The district court must then determine whether "the proposed expert testimony is 'relevant to the task at hand,'" meaning that it logically advances a material aspect of the proponent's case. *Id.* An expert's testimony is admissible under *Daubert* so long as it is "based on scientific techniques and advanced a material aspect of the government's case." *See Daubert*, 509 U.S. at 589; *Sherwood*, 98 F.3d at 408. Under *Daubert*, the district court acts as a "gatekeeper," excluding "junk science" that does not meet the standards of reliability required under Rule 702. *Domingo ex rel. Domingo v. T.K., M.D.*, 276 F.3d 1083 (9th Cir. 2002) (citing *Daubert*, 509 U.S. at 589 and *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997)). The trial court accomplishes this goal through a preliminary determination that the proffered evidence is both relevant and reliable. *Daubert*, 509 U.S. at 589-95.

In his Affidavit, Trooper Robertson has attached his report outlining his findings and conclusions regarding the July 2, 2010 accident. (Dkt. 19, Ex. A.) In ruling on this Motion, the Court did not need to consider Trooper Robertson's Affidavit and/or report in order to find a genuine issue of material fact exists so as to preclude entry of summary judgment. The statements by the Gardners, the witness, and the police accident reports are sufficient upon which this Court concludes that genuine issues of material fact exist. As

**MEMORANDUM ORDER - 16**

such, the Motion to Strike the Affidavit of Trooper Edward Robertson is denied. The extent and scope of any testimony by Trooper Robertson at trial, if any, will be determined at trial.

## ORDER

**NOW THEREFORE IT IS ORDERED** as follows:

1)      Plaintiff's Motion for Summary Judgment is **DENIED** (Dkt. 14).

2)      Plaintiff's Motion to Strike is **DENIED** (Dkt. 24).

DATED:  **August 6, 2012**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM ORDER - 17**